UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BROAD-OCEAN TECHNOLOGIES, LLC,

               Plaintiff,                       Case Number 21-11297

v.                                             Honorable David M. Lawson

BO LEI,

               Defendant.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

Plaintiff Broad-Ocean Technologies, an automotive supplier that specializes in designing and manufacturing electric drive motors, filed this lawsuit accusing defendant Bo Lei, a software engineer and former employee, of stealing trade secrets when he left his employment with the plaintiff and engaging in extraordinary and sophisticated measures to cover up the theft. Broad-Ocean brings claims based on federal and Michigan trade secrets law; breach of the employment contract, which included a number of confidentiality provisions; and breach of fiduciary duty. Lei moves for summary judgment, alleging, among other things, that Broad-Ocean has not identified its trade secrets with sufficient particularity to move forward on its claims. The Court disagrees. Although Broad-Ocean's description of its intellectual property is sketchy, there is enough information in the record for it to withstand summary judgment on that argument. However, the evidence does not show that Lei had a fiduciary relationship with his employer, and the claim of breach of fiduciary duty is unsupported and will be dismissed.

I.

Broad-Ocean is headquartered in Novi, Michigan. It serves customers across North America, designing and developing advanced electric motors, inverters, motor controllers,

powertrain systems, and supervisory controllers.  It alleges that it invests significant time, effort, and money developing and acquiring intellectual property, including complex mechanical designs, computer-aided design (CAD) models, electrical schematics, simulations, printed circuit board fabrication data, and other data.  It says that it has committed millions of dollars in investments to develop next-generation fuel cell technology to replace internal combustion engines.

Defendant Bo Lei began working at Broad-Ocean around October 3, 2016.  As a Senior Software and Control Engineer, he was responsible for developing control software for Fuel Cell Control Units and Belt Starter Generators, and he was granted access to Broad-Ocean's intellectual property, trade secrets, and other confidential information.

Broad-Ocean requires its personnel to execute an Employee Confidentiality and Assignment of Intellectual Property Agreement.  *Id.* at ¶ 15, PageID.4.  The Confidentiality Agreement expressly prohibits personnel from disclosing any intellectual property, trade secrets, or other confidential information, including but not limited to

> experimental research work; technical and business methodologies, processes, and tools; machinery; formulae; drawings; business development plans; software development plans; source and object codes; suppliers; customers; technology; know-how; products; business data; licensors; licensees; contractors; subcontractors; trade secrets and inventions (whether or not subject to a pending patent application), and other forms of intellectual property or proprietary information.

Confidentiality Agreement, ¶ 1(a), ECF No. 1-2, PageID.37.  Employees agree to maintain the confidentiality of all such information during and after the termination of their employment, and to "immediately return" to Broad-Ocean all materials in their possession or control.  *Id.* at ¶¶ 2, 11, PageID.39-40.  When defendant Bo Lei signed a copy of the Confidentiality Agreement on October 3, 2016, he acknowledged that it restricted his right to "disclose or use" Broad-Ocean's confidential information subsequent to his employment.  *Id.* at PageID.42.  The Confidentiality

Agreement contains a choice-of-law provision stating that it will be governed by and construed according to the laws of the State of Michigan. *Id.* at ¶ 14(b), PageID.41.

In addition to signing Broad-Ocean's Confidentiality Agreement, Lei signed a Non-Compete Agreement that prohibited him from accepting a position with a direct competitor for one year after leaving Broad-Ocean. He also signed an offer letter that conditioned his employment on his acceptance of all confidentiality obligations.

Broad-Ocean also invests significant resources in protecting its intellectual property in order to maintain an advantage over its competitors. One way is by storing its information and trade secrets on a private, confidential system hosted on a private internal server. Only authorized personnel may access the server, using login credentials provided by Broad-Ocean's information technology department. The credentials are tailored to individual users, so that different personnel are permitted to access only those portions of the server based on their respective job duties. Broad-Ocean records each employee's file downloads, manipulations, and deletions in real time. After an employee separates from Broad-Ocean, the company reviews his or her file activity to ensure that the secrecy and confidentiality of all material is maintained.

On January 26, 2021, Lei told Broad-Ocean's president, Terry Zhang, that he had received employment offers from other companies and was unsure whether he would accept them. Lei expressed the same uncertainty when he and Zhang spoke again on March 21, 2021. Zhang reminded Lei that, although he was permitted to seek outside opportunities, he could not accept a position with a direct competitor for one year and could not take any intellectual property with him or use it anywhere else. Lei confirmed that he would not do so.

On April 2, 2021, Lei tendered his resignation letter to Broad-Ocean. Zhang immediately called Lei to confirm his decision and reiterated his confidentiality obligations, and Lei again

confirmed that he understood.  Finally, Zhang met with Lei on April 15, 2021, his second-to-last day of employment, to review Lei's Non-Compete and Confidentiality Agreements one last time.  During that meeting, Zhang presented Lei with a letter confirming their discussion.  Lei signed the letter, acknowledging his conversations with Zhang and his obligation to maintain the confidentiality of Broad-Ocean's trade secret and other information, and verifying that he was not in possession or control of any confidential information.

After Lei separated from Broad-Ocean, the company conducted its routine review of his company-issued laptop and server activity.  The review revealed that Lei accessed a significant amount of Broad-Ocean intellectual property on April 2 and 3, 2021, the day of and day after his resignation; transferred the information to various external spaces; and then attempted to wipe the evidence from his hard drive.  Most notably, on April 2, 2021, at 10:51 a.m., Lei created a folder named "taxinfo" on his hard drive.  He then spent 25 minutes renaming and copying documents and files into the folder, including numerous documents related to the Fuel Cell Control Unit.  Then, at 11:07 a.m., Lei uploaded the "taxinfo" folder to his personal, cloud-based Google Drive, and deleted the "taxinfo" folder from his hard drive.  The record contains a spreadsheet, filed under seal, that lists the files Lei uploaded into the "taxinfo" folder.  *See* Taxiinfo Spreadsheet, Ex. C, ECF No. 4-2, PageID.163 (sealed).  The spreadsheet contains source file and pathway information, most of which include the notations "XXL," "1040," and "BOT_FCU."  The names and contents of the files otherwise are unclear.

Broad-Ocean retained a third-party forensic analysis expert, Spectrum Computer Forensics & Risk Management, to assess Lei's information technology equipment.  Spectrum's founder and managing member, J. Stott Matthews, imaged Lei's computer hard drive on April 22, 2021.  His examination revealed that, from March 29 to April 3, 2021, Lei downloaded more than 610 files

from Broad-Ocean's corporate server, totaling more than 1.8 GB of data.  It confirmed that Lei moved confidential files into the "taxinfo" folder, compressed the folder, then moved the folder into his personal Google Drive.  And it further revealed that Lei had undertaken significant efforts to erase data from his hard drive to inhibit any future analysis, including installing the anti-forensics application 360Safe on his laptop on April 2, 2021.  Matthews surmised that Lei used the application to attempt to wipe the artifacts created by his transfer of proprietary data from Broad-Ocean's server.  Lei used the command line — not Windows file explorer — to delete 360Safe from his laptop, likely in an effort to evade detection of such activity.  *Id.* at ¶ 11, PageID.54; *see also* Deletions Spreadsheet, Ex. F, ECF No. 4-4, PageID.189 (sealed) (containing a list of source files apparently connected to 360Safe).  Matthews also noted that Lei used a Toshiba USB-storage device on March 2, 2021 and routinely sent information to his personal Gmail account.  However, because Lei used the 360Safe application, Matthews could not identify what data Lei transferred to the USB drive.

Of the hundreds of files Lei apparently downloaded from Broad-Ocean's server, Broad-Ocean says that most were 3D computer-aided design files of fuel cell systems, which typically are used by system or mechanical engineers, not software engineers like Lei.  It produced a spreadsheet of 821 source files it says Lei downloaded, some of which contain part names and some of which are identified only by a series of letters and numbers.  *See* Downloads Spreadsheet, Ex. 3, ECF No. 4-3, PageID.175 (sealed).  Lei denies that the files he downloaded are trade secrets. He says that he used his Google Drive with Broad-Ocean's knowledge and consent, deleted all of Broad-Ocean's files from his possession before leaving its employment, and did not access or download any of Broad-Ocean's information after leaving its employment.

Broad-Ocean filed its complaint in June 2021 and asked for a preliminary injunction, which the Court granted.  As ordered in that injunction, Lei provided his personal laptop to Broad-Ocean for a forensic examination.  Spectrum analyzed the laptop and found evidence that, on April 2, 2021, Lei downloaded the "taxinfo" folder form his Google Drive to his laptop, then permanently deleted his activity.

The preliminary injunction also ordered Lei to provide his new work laptop to his counsel, and for his counsel to make the laptop available to Spectrum.  At the time, Lei was employed by Hyzon Motors.  After some dispute, Broad-Ocean ultimately engaged Spectrum to conduct a forensic examination of Lei's Hyzon laptop.  J. Stott Matthews examined the computer and found almost no artifacts of any recent files, indicating that Lei had wiped information from the laptop before turning it over.  Nevertheless, Matthews found artifacts indicating that the laptop at some point contained at least two files referencing Broad-Ocean documents by name, and another referencing Broad-Ocean by "hash value."  Because the files had been removed from the laptop, however, Matthews was not able to verify their names or content.  Matthews also determined that on June 14 and 15, 2022 — immediately before Lei surrendered the computer to Hyzon — "shadow copies" of 4.3 GB of data were created then deleted on Lei's laptop.  Matthews concluded that someone had engaged in uncommonly sophisticated anti-forensic activities to obstruct his review.

Broad-Ocean served its responses to Lei's first set of interrogatories on November 5, 2021.  After interposing an objection to a question asking it specifically to identify each trade secret it claims Lei misappropriated, Broad-Ocean responded by pointing to

> Exhibits C and E to the Complaint, filed under seal, which contain the names of hundreds of files of Broad-Ocean's intellectual property and trade secrets — primarily CAD part files (3D design files) of fuel cell systems — that Broad-Ocean has specifically alleged Defendant misappropriated.

Discovery Resp., ECF No. 40-3, ¶ 15, PageID.530-31.

Broad-Ocean's complaint pleads claims that Lei (1) violated the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836; (2) violated the Michigan Uniform Trade Secrets Act, Mich. Comp. Laws § 444.1901, and the common-law duty of non-disclosure; (3) breached the Confidentiality Agreement; (4) breached his fiduciary duty to Broad-Ocean; (5) converted Broad-Ocean's property; and (6) violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.  However, Broad-Ocean later stipulated to dismiss its Computer Fraud and Abuse Act and conversion claims (Counts 5 and 6).

Lei's summary judgment motion attacks the remaining counts of the complaint.

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A trial is required when "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The party bringing the motion first must explain why the record is so settled that no genuine issues of material fact exist by "identify[ing] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"  *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).  To rebut that showing, "[t]he nonmoving party 'must set forth specific facts showing that there is a genuine issue for trial.'"  *Id.* at 628 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).  The opposing party must base that rebuttal on specific facts in affidavits,

depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. Notably, however, "[t]he court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 251-52).

A.

1.

Lei argues first that Broad-Ocean's trade secret claims should be summarily dismissed because Broad-Ocean has failed to identify with particularity what trade secrets he allegedly misappropriated.

Broad-Ocean brings claims for trade secret misappropriation under both the federal Defend Secrets Act, 18 U.S.C. § 1836 *et seq*., and the Michigan Uniform Trade Secrets Act, Mich. Comp. Laws § 445.1901 *et seq*. Courts have analyzed these claims together because the elements are substantially similar. *See, e.g.*, *RGIS, LLC v. Gerdes*, 817 F. App'x 158, 162 (6th Cir. 2020) (assuming without deciding that "the federal law follows the same standards as the state law"); *InteliClear, LLC v. ETC Glob. Holdings, Inc*., 978 F.3d 653, 657 (9th Cir. 2020) (concluding that it is "appropriate" to consider federal and state trade secrets claims together); *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1311 n.13 (11th Cir. 2020) (same)

Under both laws, the first element the plaintiff must establish "is that the information at issue actually constitutes a 'trade secret.'" *Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 410–11 (6th Cir. 2006) (citing *Stromback v. New Line Cinema,* 384 F.3d 283, 302 (6th Cir. 2004) (the other two elements being that the defendant acquired the trade secret in confidence, and

- 8 -

the defendant's unauthorized use of it).  A "trade secret" is information, "including a formula, pattern, compilation, program, device, method, technique, or process," that

> (i) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

> (ii) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Mich. Comp. Laws § 445.1902(d); *Mike's Train House*, 472 F.3d at 410.  In determining whether information constitutes a trade secret, courts consider several factors.  But before a court can apply those factors, the plaintiff must identify what it is that it believes is the trade secret.  *Caudill Seed & Warehouse Co. v. Jarrow Formulas, Inc.*, 53 F.4th 368, 380-81 (6th Cir. 2022) (stating that "a trade-secrets plaintiff must 'defin[e] the information for which protection is sought with sufficient definiteness to permit a court to apply the criteria for protection'") (quoting Restatement (Third) of Unfair Competition § 39 cmt. d (Am. L. Inst. 1995)).

Broad-Ocean has not made that task very easy for the Court.  Although it insists that Lei downloaded files that contain computer-aided designs of fuel cell systems, it has presented very little evidence in support of that assertion.  It points to (1) its pleaded allegation in its verified complaint that "nearly all" of the more than 600 files Lei downloaded to his hard drive before leaving were 3D computer-aided design files of fuel cell systems, (2) its answers to interrogatories stating the same, and (3) two spreadsheets, filed under seal, that contain source file and path information for said files.  *See* Compl., ¶ 43, ECF No. 1, PageID.11; Discovery Resp., ¶ 15, ECF No. 40-3, PageID. 530-31; Taxiinfo Spreadsheet, Ex. C, ECF No. 4-2, PageID.163 (sealed); Downloads Spreadsheet, Ex. 3, ECF No. 4-3, PageID.175 (sealed).  However, it has not further elucidated the contents of the files listed in the sealed spreadsheets — many dozens of which are

identified only by unintelligible combinations of letters or numbers — or explained why these design files inherently are secret.

Broad-Ocean's reluctance to be specific is understandable: "the more precise the claim, the more a party does to tip off a business rival to where the real secrets lie and where the rival's own development efforts should be focused." *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583 (7th Cir. 2002) (applying the Wisconsin Uniform Trade Secrets Act). Nevertheless, it is inadequate for Broad-Ocean merely to "cite and incorporate by reference hundreds of documents that purportedly reference or reflect the trade secret information," *InteliClear, LLC v. ETC Glob. Holdings, Inc*., 978 F.3d 653, 658 (9th Cir. 2020), or "just identify a kind of technology and then invite the court to hunt through the details in search of items meeting the statutory definition" of a trade secret, *IDX*, 285 F.3d at 584; *see also TLS Mgmt. & Mktg. Servs., LLC v. Rodriguez-Toledo*, 966 F.3d 46, 54 (1st Cir. 2020) ("Because TLS failed to identify the process with specificity, let alone establish what aspects were not readily ascertainable, no reasonable fact finder could determine that TLS proved its claim by merely asserting that the process . . . qualified as a trade secret."); *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1266 (7th Cir. 1992) ("It is not enough to point to broad areas of technology and assert that something there must have been secret and misappropriated."). "The plaintiff must show concrete secrets," *ibid.*, "at a level of depth beyond merely listing technical concepts," *Caudill Seed*, 53 F.4th at 380.

Broad-Ocean points to a number of items in the record that it believes satisfy its obligation to describe its intellectual property in a way that allows it to be deemed a trade secret. First, it states that the documents that Lei renamed and uploaded to the "taxinfo" folder were "files containing Broad-Ocean's intellectual property — primarily documents and files related to the Fuel Cell Control Unit." Compl., ¶ 36, ECF No. 1, PageID.10. Second, it alleges that "nearly all"

of the 687 files Lei downloaded from its server between March 29 and April 3, 2021, "were CAD part files (3D Design files) of fuel cell systems." *Id.* at ¶¶ 42-43, PageID.11.

Broad-Ocean makes three additional factual allegations relevant to the acquired files. It says that it has invested millions of dollars and countless hours developing fuel cell technology, which "represents the next generation in the automotive industries' shift from internal combustion engines to fuel cell driven powertrains." *Id.* at ¶ 37, PageID.10. It explains that CAD files typically are used by system or mechanical engineers. *Id.* at ¶ 44, PageID.11. And it states that it wished to file the source file information for the acquired files under seal "due to the confidential nature of the information therein." *Id.* at ¶ 42.

The other factual allegations Broad-Ocean made in its verified complaint pertain to *all* of its trade secrets. Broad-Ocean states that, "for example," its

> intellectual property, trade secrets, and technical and proprietary information includes, without limitation, design data for the hardware, software, and control aspects of Broad-Ocean's motors and inverters including, but not limited to, Fuel Cell Control Units ("FCU") and Belt Starter Generators ("BGS"). This information is comprised of complex mechanical designs, computer-aided design (CAD) models, electrical schematics, simulations, software and control algorithms, printed circuit board (PCB) fabrication data, and other data and information relating to the design and development of cutting edge electric motors, inverters, and related products.

*Id.* at ¶ 9, PageID.3. It alleges that all of this "above-described information is considered confidential, proprietary, and trade secret information" and has "given Broad-Ocean an opportunity to obtain an advantage over competitors who did not know or use that information." *Id.* at ¶ 10, PageID.3-4. And it states that it has "invested significant time, effort, and money acquiring and developing intellectual property, trade secrets, and technical and propriety information." *Id.* at ¶ 8. Again, Broad-Ocean also describes the technological measures its takes to maintain the secrecy and confidentiality of all of its trade secrets. *Id.* at ¶¶ 14-25, PageID.4-7.

- 11 -

One problem with Broad-Ocean's approach is that it runs afoul of the specificity obligation endorsed by the Sixth Circuit.  "If a plaintiff 'effectively assert[s] that all information in or about its [product] is a trade secret,' then it brings a case 'both too vague and too inclusive,' and does not allow a jury to 'separate the trade secrets from the other information that goes into any' product in the field."  *Caudill Seed,* 53 F.4th at 381 (quoting *IDX Sys. Corp.*, 285 F.3d at 583-84).  Merely asserting that items are "trade secrets" does not make them so.  *Utilase, Inc. v. Williamson*, 188 F.3d 510, 1999 WL 717969, at *7 (6th Cir. 1999) (table).

Broad-Ocean cites the Sixth Circuit's decision in *Mike's Train House* for the proposition that courts "routinely find[] that engineering design files are protected trade secrets."  Resp., ECF No. 42, PageID.595-96.  However, what the court of appeals actually held in *Mike's Train House* is that, "[w]hen material such as design drawings or manuals are trade secrets based on a unique combination of both protected and unprotected material, a plaintiff should not be obligated to identify which components of the protected material is secret."  472 F.3d at 411.  And in *Caudill*, the court of appeals clarified that a combination-trade-secret plaintiff must describe with sufficient specificity why the *compilation* of protected and unprotected material at issue is unique.  53 F.4th at 381.  Thus, the court of appeals found that the model train design drawings at issue in *Mike's Train House* properly were considered trade secrets because the plaintiff described the specific "kinds of secret information" contained in the drawings that could not "be determined by simply measuring the parts on a manufactured engine or looking at a picture" — including tolerances, data and reference points, clearances, pivot points, spring tensions, and specific alloys.  472 F.3d at 411.  It similarly found the research and development processes at issue in *Caudill* to be trade secrets based on testimony and documents illustrating that the plaintiff relied on a combination of

- 12 -

proprietary testing, datasets, and laboratory discoveries to develop seed derivatives.  53 F.4th at 381.

Here, Broad-Ocean offers no testimony or documents relevant to determining what information in the computer-aided design files is secret, or what combination of non-secret information is unique.  Instead, it broadly alleges that *all* of the downloaded files contain confidential computer-aided design, electrical schematics, simulations, software, control algorithms, and printed circuit board fabrication data, among other things.  It says that all such information gives it a competitive advantage and details the efforts it takes to protect said files.

There are good reasons for rejecting Broad-Ocean's circular argument that its computer-aided design files are secret because they contain computer-aided design models.  For one, the Sixth Circuit made clear in *Caudill* that a combination-trade-secret plaintiff cannot merely assert "that all information in or about its [product] is a trade secret," or "merely offer lists of broad technical concepts . . . identifying categories" of "highly complex technical information."  53 F.4th at 381.  That, in effect, is what Broad-Ocean is doing here.

For another, every circuit court to consider similar trade secret claims has required plaintiffs to explain with greater specificity why their technology is secret in order to survive summary judgment.  In *Integrated Cash Management Services, Inc. v. Digital Transactions, Inc.*, 920 F.2d 171, 174 (2d Cir. 1990), for example, the Second Circuit found a generic software system to be a trade secret, but it did so based on evidence and "extensive expert testimony" detailing the unique way the programs interact and establishing that technical aspects of the software were not in the public domain.  The plaintiff also offered expert testimony that the software product's architecture could not readily be duplicated without secret information.  Likewise, in *Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 662-64 (4th Cir. 1993), the Fourth Circuit found that

tunnel system software was a trade secret, but it was able to point to information offered by the plaintiff that explained how it used a certain computer language to write the software system and compile its source code, and how it uses said code to offer specific client services that generate specific revenues. And in *IDX Systems Corp.*, the Seventh Circuit specifically rejected a plaintiff's argument that "all information in or about its software is a trade secret." 285 F.3d at 583. Broad-Ocean correctly notes, however, that the Seventh Circuit also required the *IDX* plaintiff to "separate the trade secrets from the other information that goes into any software package," *id.* at 854 — something, again, that combination-trade-secret plaintiffs need not do in this circuit, *Mike's Train House*, 472 F.3d at 411.

Broad-Ocean pleaded that the files Lei acquired contained computer-aided design models of next-generation fuel-cell technology. It stated that its competitors do not have access to that technology, which it has spent millions of dollars to develop, and detailed its efforts to protect the acquired files. These verified pleadings, while relatively bare, put Lei on notice of what trade secrets Broad-Ocean is alleging he misappropriated. They also distinguish the case from *Mike's Train House*: Broad-Ocean does not acknowledge or even suggest that its computer-aided design models contain any unprotected material. Instead, it appears to argue that the models entirely are novel, and Lei does not present any argument or evidence to the contrary. Nor is there indication that the contents of the files widely were known within Broad-Ocean's industry or otherwise. Viewing its argument in that context, Broad-Ocean's reliance on *Mike's Train House* and other combination-trade-secret jurisprudence does not advance its case.

Nonetheless, determining whether a plaintiff sufficiently particularized its trade secrets requires a modicum of common sense. Broad-Ocean contends that Lei misappropriated a specific list of design files. It is reasonable to conclude that computer-aided design models of fuel-cell

technology components inherently are more secret than the business processes and strategies, categories of information, or "low technology commodity products" considered by other courts. *See, e.g. AMP Inc. v. Fleischhacker*, 823 F.2d 1199, 1203 (7th Cir. 1987) (low-technology products); *TLS Mgmt. & Mktg. Servs., LLC v. Rodriguez-Toledo*, 966 F.3d 46, 56 (1st Cir. 2020) (business strategy); *Magna Donnelly Corp.*, 662 F. Supp. 2d 855, 859 (E.D. Mich. 2009) (categories of information).   It also is appropriate to distinguish this case from those where plaintiffs alleged that defendants misappropriated the ends, but not the means, of their business. In *IDX*, for example, the plaintiff sued a competitor for developing a similar software package and contended that it must have misappropriated its methods and processes to do so.  *See IDX*, 285 F.3d at 583.  That resulted in a dispute regarding whether the competitor instead could have used non-secret information to develop its software.  *Id.* at 583-84; *see also Caudill*, 53 F.4th at 376-77 (contesting the secrecy of process and knowledge used to manufacture raw materials).  In contrast, Broad-Ocean here contends that, based on forensic evidence, Lei misappropriated specific files — the means — in what appears to have been an unsuccessful effort to mimic its end-product fuel-cell technology.  There is no dispute that the files came from Broad-Ocean.  The concreteness of Broad-Ocean's allegations distinguishes its case from those cited by the parties.  *See InteliClear,* 978 F.3d at 658 (distinguishing "'[l]ong lists of general areas of information containing unidentified trade secrets'" from the "concrete identification" necessary for a defendant to "prepare a rebuttal") (quoting *IDX Sys. Corp. v. Epic Sys. Corp.*, 165 F. Supp. 2d 812, 819 (W.D. Wis. 2001)).  It also creates questions of fact for trial.

It also is appropriate to take account of Lei's extraordinary efforts to conceal his acquisition of the files.  He used his superior technical knowledge and sophisticated means to copy and transfer the files, conceal their identity, and then cover his tracks.  It is reasonable to infer at this stage of

the case that Lei knew what he was taking from his former employer, and that its value was derived from unique properties that were not known outside Broad-Ocean's business. Those efforts mirror Broad-Ocean's own extraordinary measures it implemented to "guard [the] secrecy of [its] information," which also provides insight into the "value of [the] information to" Broad-Ocean and likely its competitors in the fuel cell technological industry. *See Magna Donnelly*, 662 F. Supp. 2d at 859 (quoting *Wysong Corp. v. M.I. Industries*, 412 F. Supp. 2d 612, 626 (E.D. Mich. 2005)). Broad-Ocean alleges that it has invested "millions of dollars" to develop this fuel cell technology, a fact that is unrebutted on this record. And it has averred that its CAD models, electrical schematics, circuit board fabrication data, and software and control algorithms are unique and not available to competitors — facts that also are unrebutted at this stage of the case. The plaintiff, therefore, has put forth facts that allow it to avoid summary judgment on the defendant's specificity argument.

### 2.

Fact questions remain as to whether Lei knowingly "acquired" the files "by improper means." Mich. Comp. Laws § 445.1902(b)(i). Broad-Ocean has presented evidence suggesting that Lei downloaded certain design files from its server and then uploaded them to his personal Google Drive in order to retain possession of the files after terminating his employment. *See* Taxiinfo Spreadsheet, Ex. C, ECF No. 4-2, PageID.163; Downloads Spreadsheet, Ex. 3, ECF No. 4-3, PageID.175; Matthews Decl., ¶¶ 7-13, ECF No. 1-5, PageID.52-55; Spectrum Ref., ECF No. 42-2, PageID.607. Because Lei knew that he was barred from retaining any files, *see* Confidentiality Agreement, ¶ 11, ECF No. 1-2, PageID.40, he must also have known that downloading and saving files from the server was improper. That is sufficient to create a question of fact as to whether Lei misappropriated trade secrets. Contrary to Lei's argument, Broad-Ocean

need not establish that Lei also disclosed or used the files in order to survive summary judgment on its misappropriation claims. "[W]hile unauthorized use of a trade secret is an element of a common law claim for misappropriation, MUTSA only requires that a plaintiff show that the secret was disclosed or acquired." *Erlich Prot. Sys., Inc. v. Flint*, No. 345323, 2019 WL 5851938, at *4 (Mich. Ct. App. Nov. 7, 2019) (citations omitted); *see also Ajuba Int'l, L.L.C. v. Saharia*, 871 F. Supp. 2d 671, 691 (E.D. Mich. 2012) ("[A] plaintiff need not plead that the defendant 'used' the trade secret or benefitted from it in any way." (quoting *Dow Corning Corp. v. RSI Silicon Prod., LLC*, No. 10-11226, 2010 WL 4723428, at *5 (E.D. Mich. Nov. 15, 2010)).

Broad-Ocean has demonstrated that genuine issues of material fact remain as to whether Lei misappropriated the files that the plaintiff alleges contain the trade secrets discussed above. Lei is not entitled to summary judgment on the plaintiff's federal and state trade secret misappropriation claims.

## B.

Lei argues that, because Broad-Ocean has not established the damages it suffered as a result of his breach of his Confidentiality Agreement, he is entitled to summary judgment on Broad-Ocean's claim for breach of contract.

Under Michigan law, damages indeed are an element of a breach of contract action, and Broad-Ocean has the burden of proving its damages with reasonable certainty. *See, e.g., Alan Custom Homes, Inc. v. Krol*, 256 Mich. App. 505, 512, 667 N.W.2d 379, 383 (2003). That does not mean, however, that Broad-Ocean must establish its damages with reasonable certainty at the summary judgment stage of the case. "Damages cannot be speculative, but this only means that the *fact* of damages, not their amount, cannot be uncertain." *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 837 (6th Cir. 2007) (emphasis in original) (citing *Kemmerer v. ICI Americas Inc.*, 70

F.3d 281, 289–91 (3d Cir. 1995)).  It therefore is sufficient at this stage in the proceedings for Broad-Ocean to demonstrate that material questions of fact remain as to the extent to which it suffered damages as a result of Lei's breach of his Confidentiality Agreement.  *See ibid*.  Broad-Ocean has made that showing:  Taking the facts in the light most favorable to Broad-Ocean, it has raised a question of fact as to whether Lei brought some of its files to its competitor, Hyzon.  The forensic examinations of Lei's computers suggested that Lei may have uploaded at least some Broad-Ocean files to his Hyzon computer in violation of the agreement.  And even if the information had not caused the plaintiff a specific pecuniary loss, "the law infers some damages — at least nominal damage — from the breach of a contract."  *See 4041-49 W. Maple Condo. Ass'n v. Countrywide Home Loans, Inc*., 282 Mich. App. 452, 459-60, 768 N.W.2d 88, 92 (2009) (citing *Vandenberg v. Slagh*, 150 Mich. 225, 229, 114 N.W. 72 (1907)).  "[N]ominal damages are generally sufficient to sustain a cause of action."  *Ibid.* (citing *Health Call of Detroit v. Atrium Home & Health Care Services, Inc*., 268 Mich. App. 83, 107, 706 N.W.2d 843 (2005)).

Summary judgment is not warranted on Broad-Ocean's breach of contract claim.

## C.

Lei also argues that he is entitled to summary judgment on Count 4 of the complaint because Broad-Ocean has not offered sufficient evidence to sustain a breach-of-fiduciary-duty claim.

To establish a claim for breach of fiduciary duty under Michigan law, a plaintiff must prove "(1) the existence of a fiduciary duty, (2) a breach of that duty, and (3) damages caused by the breach of duty."  *Highfield Beach at Lake Michigan v. Sanderson*, 331 Mich. App. 636, 666, 954 N.W.2d 231, 247 (2020) (citations omitted).  A fiduciary relationship "arises from the reposing of faith, confidence, and trust and the reliance of one on the judgment and advice of another."  *Teadt*

*v. Lutheran Church Missouri Synod*, 237 Mich. App. 567, 580-581, 603 N.W.2d 816, 823 (1999). "A person in a fiduciary relation to another is under a duty to act for the benefit of the other with regard to matters within the scope of the relation." *Ibid.* (citing *Melynchenko v. Clay*, 152 Mich. App. 193, 197, 393 N.W.2d 589 (1986)). A breach of fiduciary duty arises when a person holding a position of influence and confidence "abuses the influence and betrays the confidence." *Highfield Beach*, 331 Mich. App. at 666 n.13, 954 N.W.2d at 247 (citing *Teadt*, 237 Mich. App. at 581, 603 N.W.2d at 823).

Broad-Ocean insists that Lei owed it a fiduciary duty as its employee because it entrusted him with confidential information pursuant to the Confidentiality Agreement. But unless circumstances indicate otherwise, the employer-employee relationship alone generally does not give rise to fiduciary duties. *See, e.g.*, *Delphi Auto. PLC v. Absmeier*, 167 F. Supp. 3d 868, 884 (E.D. Mich. 2016); *Wysong*, 412 F. Supp. 2d at 623-24 (citing *Bradley v. Gleason Works*, 175 Mich. App. 459, 463, 438 N.W.2d 330, 332 (1989)). And Broad-Ocean cites no authority in support of the proposition that every employee who signs a confidentiality agreement becomes a fiduciary of his employer. That is because fiduciary relationships arise from influence — that is, by the exchange of confidence for superiority, judgment, or advice. *See, e.g.*, *Fassihi v. Sommers, Schwartz, Silver, Schwartz & Tyler, P.C.*, 107 Mich. App. 509, 515, 309 N.W.2d 645, 648 (1981) ("A fiduciary relationship arises when one reposes faith, confidence, and trust in another's judgment and advice."); *Smith v. Saginaw Sav. & Loan Ass'n*, 94 Mich. App. 263, 274, 288 N.W.2d 613, 618 (1979) ("Relief is granted when such position of influence has been acquired and abused."); *In re Wood's Est.*, 374 Mich. 278, 283, 132 N.W.2d 35, 39 (1965) ("[A] fiduciary relation exists *as a fact*" where "there is confidence reposed on one side, and the resulting superiority and influence on the other."). Under Michigan law, mid-level employees generally do

not owe fiduciary duties to their employers unless their employer places them in a position where they are responsible for strategic plans or operations, or where they are serving as their employer's agent.  *See, e.g.*, *Petroleum Enhancer, LLC v. Woodward*, 690 F.3d 757, 766 (6th Cir. 2012) (finding corporate director a fiduciary); *Hayes-Albion v. Kuberski*, 421 Mich. 170, 187, 364 N.W.2d 609, 617 (1984) (finding chief engineer a fiduciary); *Echelon Homes, L.L.C. v. Carter Lumber Co*., 261 Mich. App. 424, 446, 683 N.W.2d 171, 184 (2004), *rev'd in part on other grounds*, 472 Mich. 192, 694 N.W.2d 544 (2005) (finding bookkeeper a fiduciary); *Chem-Trend Inc. v. McCarthy*, 780 F. Supp. 458, 460 (E.D. Mich. 1991) (finding employee acting as agent a fiduciary).

Although Lei was a senior software engineer at Broad-Ocean, there is no evidence that he served as a high-level executive or was placed in a position of influence at the company.  Nor has Broad-Ocean set forth any specific facts showing that there is a genuine question whether Lei acted as its agent.  That alone means that Lei is entitled to summary judgment on Broad-Ocean's fiduciary duty claim.

Lei also is entitled to summary judgment for another reason:  Broad-Ocean's fiduciary duty claim is "based solely upon the misappropriation of a trade secret."  *Wysong Corp.*, 412 F. Supp. 2d at 623 (quoting *Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co*., 270 F. Supp. 2d 943, 946 (W.D. Mich. 2003)).  MUSTA, however, "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret."  *Magna Donnelly*, 662 F. Supp. 2d at 858 (quoting Mich. Comp. Laws § 445.1908(1)); *see also CMI Int'l, Inc. v. Intermet Int'l Corp*., 251 Mich. App. 125, 131-32, 649 N.W.2d 808, 812-13 (2002).  Although as a general matter "[a] claim for breach of fiduciary duty . . . is really the opposite of a misappropriation claim," *Wysong*, 412 F. Supp. 2d at 623-24, a plaintiff nevertheless cannot

recover for both a MUSTA and a fiduciary duty claim if the two claims are supported by identical underlying facts, *see, e.g.*, *CMI Int'l*, 251 Mich. App. at 131-32, 649 N.W.2d at 812-13 (finding fiduciary duty claim displaced by MUSTA); *Radiant Glob. Logistics, Inc. v. Furstenau*, 368 F. Supp. 3d 1112, 1134 (E.D. Mich. 2019) (same).

There is no question that Broad-Ocean's fiduciary duty claim rests on the same underlying facts as its trade secret misappropriation claims. Broad-Ocean pleads that Lei owed it "a fiduciary duty not to misappropriate Confidential Information or trade secrets," and breached that duty by intentionally taking said secrets. Compl., ¶¶ 102-03, ECF No. 1, PageID.23. It makes no other factual allegations in support of its fiduciary duty claim. The claim must be dismissed both because there is no evidence of a fiduciary relationship and because it is preempted by MUSTA.

III.

Fact questions preclude summary judgment on the plaintiff's claims for misappropriation of trade secrets under federal and state law and its claim for breach of contract. The defendant is entitled to summary judgment on the claim for breach of fiduciary duty.

Accordingly, it is **ORDERED** that the defendant's motion for summary judgment (ECF No. 40) is **GRANTED IN PART AND DENIED IN PART**. Count 4 of the complaint alleging a claim for breach of fiduciary duty is **DISMISSED WITH PREJUDICE**. The motion is **DENIED** in all other respects.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  January 9, 2023